**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0758n.06

Case No. 15-3044

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Nov 18, 2015

DEBORAH S. HUNT, Clerk

CHRISTIAN CHINEDU DURUJI,  )
  )
  Petitioner,  )
  )  ON PETITION FOR REVIEW
v.  )  FROM THE UNITED STATES
  )  BOARD OF IMMIGRATION
LORETTA E. LYNCH, U.S. Attorney  )  APPEALS
General,  )
  )
  Respondent.  )
  )

BEFORE: BOGGS and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

BOGGS, Circuit Judge. Petitioner Christian Duruji is a Nigerian citizen seeking review of a decision by the Board of Immigration Appeals. The Board upheld an Immigration Judge's (IJ) denial of his requests for a continuance and administrative closure, did not reinstate the IJ's grant of voluntary departure, and ordered Duruji removed from the United States. We hold that the Board acted within its discretion, and we deny Duruji's petition.

I

Duruji entered the United States in November 2003 and stayed here after his six-month tourist visa expired. *See* 8 U.S.C. § 1227(a)(1)(B). In April 2004, he married Annie Davis who,

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

between 2004 and 2011, filed four unsuccessful immediate-relative visa petitions on his behalf. The first was denied for failure to prosecute. The second was denied for failure to prove a bona fide marriage. Citizenship and Immigration Services "erroneously approved" the third. Soon thereafter, it issued a notice of intent to revoke the approval based on "inconsistent testimony and other discrepancies in the record," and then revoked it for failure to prove a bona fide marriage. Davis appealed, arguing that she did not respond to the notice because she had been hospitalized with a stroke. The Board upheld the revocation because Davis did not submit any evidence rebutting the notice's findings. The fourth was denied for failure to prove a bona fide marriage after Davis was found to lack credibility as a witness (she was unable, for example, to recall Duruji's name or age during an interview with an immigration officer).

A month after the second petition was denied, Duruji was placed in removal proceedings. Over the next five years, the Immigration Court often continued the proceedings on various grounds, including: for Duruji to obtain counsel and then later, when he retained a new attorney, for counsel to be brought up to speed; for Davis to file subsequent immigration petitions and then for additional time to adjudicate them; and twice when due to medical emergencies Duruji's counsel was unable to appear at hearings, one of which Duruji failed to attend.

In June 2012, Duruji asked for a one-year continuance of the proceedings to appeal the denial of the fourth petition. The IJ granted a shorter continuance, allowing time to prepare for a hearing to determine if a longer continuance was warranted. At the hearing, Duruji presented no new evidence but again moved for the one-year continuance and also for administrative closure, which temporarily removes a case from an IJ's active calendar or the Board's docket, *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (BIA 2012). The Department of Homeland Security opposed both motions. After discussing in detail the four visa petitions and the proceedings'

2

five-year history, the IJ denied the motions. The "key issue" was Duruji's failure to establish that the denial of the fourth petition would likely be overturned on appeal. The IJ also remarked that the Immigration Court had "attempted to allow [Duruji] ample opportunity to fully adjudicate the bona fides of his marriage" and "to have his multiple visa petition applications adjudicated." After denying the motions, the IJ granted Duruji's request for post-hearing voluntary departure but instructed him that failure to "comply with all of [its] terms and conditions"—including submitting written proof to the Board of having posted a bond within thirty days of any appeal, *see* 8 C.F.R. § 1240.26(c)(3)(ii)—would trigger "the alternate order of removal."

Duruji's subsequent appeal to the Board was dismissed and he was ordered removed from the United States. The Board affirmed the denial of Duruji's requests for a continuance and for administrative closure. It did not reinstate the IJ's grant of voluntary departure because "[t]he record . . . d[id] not reflect proof that [Duruji] paid th[e] bond." This petition followed.

II

Duruji primarily challenges the Board's decision to uphold the IJ's denial of his motions for a continuance and for administrative closure.

A

As an initial matter, the Government urges us to revisit our holding in *Garza-Moreno v. Gonzalez* that courts may review the Board's refusal to administratively close a case. 489 F.3d 239, 242 (6th Cir. 2007). According to the Government, administrative closure is "merely a procedural mechanism" that should be left to agency discretion because courts lack a meaningful standard by which to review it. Resp't's Br. 18. However, "[a] panel of this court may not overturn binding precedent because a published prior panel decision remains controlling

authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1573 (2015) (quotation marks omitted). Thus, we are not free to overturn *Garza-Moreno*.

Even if we could, the Government's argument is unconvincing. Administrative closure is used when a future event relevant to immigration proceedings is outside the parties' control and "may not occur for a significant or undetermined period of time." *Avetisyan*, 25 I. & N. Dec. at 692. Once a case is closed administratively, "either party can move to have the case recalendered" once circumstances "indicat[e] that the case is ready for a hearing." *Matter of Hashmi*, 24 I. & N. Dec. 785, 792 n.4 (BIA 2009). The Government's contention seems to be that review is precluded by the Supreme Court's decision in *Heckler v. Chaney* because there is no "meaningful standard" by which to judge administrative-closure decisions. 470 U.S. 821, 830 (1985). Review is impractical, it argues, because administrative closure involves factors "peculiarly within [the agency's] expertise" and does not affect an individual's liberty. *Id.* at 831.

We disagree. As the *Garza-Moreno* court stated, administrative closure is akin to a continuance. 489 F.3d at 242; *see also Vahora v. Holder*, 626 F.3d 907, 918 (7th Cir. 2010) (administrative closure and continuance are "cut of the same cloth"). Both are procedural rulings by which an administrative tribunal decides to proceed immediately or defer decision, which can affect an individual's liberty and thus "infringe upon areas that courts often are called upon to protect." *Heckler*, 470 U.S. at 832. The decision to temporarily continue proceedings is well within the competence of the courts to consider and the Board has provided straightforward standards for evaluating when administrative closure is appropriate. *See Avetisyan*, 25 I. & N.

Dec. at 696 (listing six nonexhaustive factors to consider and suggesting that "the guidance in [its] decisions on motions to reopen and requests for continuances is useful"). Unlike the review of agency enforcement discretion that troubled the Supreme Court in *Heckler*, the denial of administrative closure is an outcome-determinative procedural decision that is within the traditional review authority of the courts. *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). We therefore decline the invitation to break with our precedent.

B

We next turn to the merits of the Board's decisions and review both for abuse of discretion. *See Garza-Moreno*, 489 F.3d at 242; *Abu-Khaliel*, 436 F.3d at 634. The standard is highly deferential. We will disturb a Board continuance or administrative-closure determination only when it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982). None occurred here.

The Board did not abuse its discretion in upholding the IJ's denial of Duruji's continuance motion. IJs "may grant a motion for continuance for good cause showing." 8 C.F.R. § 1003.29. After granting, by our count, nine continuances over five years, the IJ held a hearing to consider Duruji's motion for a tenth so that he could appeal the denial of his fourth visa petition. That the IJ had previously granted Duruji's numerous continuance requests is a sufficient basis standing alone to uphold the denial of his continuance motion. *See Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008). But even if that were not the case, the Board's decision cannot be said to have been "made without a rational explanation." After giving Duruji the chance to present additional evidence (he had none), the IJ denied the motion. As the IJ explained, Duruji "failed to present evidence showing [a] likelihood that appeal of the [fourth]

denied [visa] petition w[ould] be successful." The circumstances of Duruji's case were not such that the IJ irrationally denied his request. In the eight years since his tourist visa had expired, Davis and Duruji failed over four successive petitions and two joint interviews, not to mention numerous opportunities to submit credible evidence, to prove a bona fide marriage. And as the IJ noted, the success of post-denial procedures is highly speculative. *See Vahora*, 626 F.3d at 919. The Board's decision echoed the IJ's reasoning. This provides a sufficient basis to find that the Board did not abuse its discretion in upholding the IJ's denial of Duruji's continuance motion.

Nor did the Board abuse its discretion in upholding the IJ's denial of Duruji's administrative-closure motion. As discussed above, the IJ's determination not to place Duruji's case in a holding pattern, and the Board's confirmation of that decision, were not made "without a rational explanation."

Duruji makes two arguments to the contrary, neither persuasive. He first claims that the Board failed to analyze the facts of his case using frameworks required by its own precedents. In *Hashmi*, the Board listed nonexhaustive factors that "may be considered" in determining whether to continue proceedings. 24 I. & N. Dec. at 790. It did the same in regard to administrative closure in *Avetisyan*. 25 I. & N. Dec. at 696.

According to Duruji, the Board should have "offer[ed] [a] specific analysis of the relevant factors." Pet'r's Br. 18. However, we have never suggested that the Board abuses its discretion when it refrains from expounding upon each suggested factor—especially when its decision can otherwise be rationally explained. *Cf. United States v. Puskas*, 391 F. App'x 432, 434 (6th Cir. 2010) (no abuse of discretion when district court at sentencing addressed the "most relevant" 18 U.S.C. § 3553(a) factors without discussing each "in detail"). Here, the IJ granted

Duruji a continuance to prepare for the hearing and listened to extensive oral argument before considered "the history of th[e] case and the steps that were taken to get the [petitions] approved and [the] level . . . of assessment . . . given to each [petition]. He ultimately concluded that the Board was unlikely to overturn the fourth petition's denial on appeal. In so doing, he addressed several of the most relevant considerations. And, as the Board instructed in *Hashmi*, the IJ "focus[ed] . . . the inquiry [on] the apparent ultimate likelihood of success on [Duruji's] adjustment application." 24 I. & N. Dec. at 791. The Board reached the same conclusion "given the numerous visa petitions filed on [Duruji's] behalf without success since 2004." Both decisions explicitly referenced the *Hashmi* and *Avetisyan* factors while analyzing the merits of his motions. To be sure, cursorily mentioning the factors with nothing else by way of explanation would be questionable. But that was not the case here; both the IJ and the Board rationally explained their decision making.

Duruji also contends that the Board abused its discretion by considering his visa petition's prospects when it upheld the denial of his continuance motion. However, the likelihood of a visa petition's success is not only a relevant factor in determining whether "good cause" exists to continue deportation proceedings but, when the Government opposes a continuance (as was the case here), it should be the "*focus* of the inquiry." *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807, 813 (BIA 2012) (emphasis added) (quoting *Matter of Rajah*, 25 I. & N. Dec. 127, 130 (BIA 2009)); *see also Hashmi*, 24 I. & N. Dec. at 790–91. Weighing Duruji's chances on appeal was neither without rational explanation nor a departure from established policy.

III

Finally, Duruji claims that the Board did not sufficiently elaborate its reasons for not reinstating the IJ's grant of voluntary departure. We review for abuse of discretion. *See Kabongo v. INS*, 837 F.2d 753, 756 (6th Cir. 1988). To avoid a removal order, an alien granted voluntary departure must "within 30 days of filing . . . an appeal with the Board, submit sufficient proof [to the Board] of having post the required voluntary departure bond." 8 C.F.R. § 1240.26(c)(3)(ii). This places the burden on the appellant to submit proof of having posted the bond. Nowhere does the regulation require that the Board meditate at length on whether and how each applicant submitted this routine paperwork. In reviewing for abuse of discretion, we need only discern a "rational explanation" for the Board's decision. Since the record in this case "d[id] not reflect proof that [Duruji] paid the bond," the Board did not abuse its discretion when it did not reinstate the grant.

IV

The Board's decisions—upholding the IJ's denial of Duruji's motion for a continuance and motion for administrative closure, and not reinstating the IJ's grant of voluntary departure—were within its discretion. We therefore DENY Duruji's petition for review.