RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARSEN SARKISOV,

        *Petitioner*,

    *v.*

PAMELA BONDI, Attorney General,

        *Respondent*.

No. 23-3965

On Petition for Review from the Board of Immigration Appeals.
No. A 098 822 051

Decided and Filed:  November 21, 2025

Before:  MOORE, BUSH, and DAVIS, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:**  Anna Darbinian, ASHERSON, KLEIN & DARBINIAN, Beverly Hills, California, for Petitioner.   Alexander J. Lutz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Arsen Sarkisov is a citizen of Russia who has lived in the United States for at least two decades without legal status.  Since 2013, he has been subject to a final order of removal.  Several years ago, Sarkisov filed a self-petition under the Violence Against Women Act ("VAWA") alleging that his former U.S.-citizen spouse subjected him to physical and emotional abuse.  After the petition was granted, Sarkisov moved to reopen his immigration proceedings under a special rule for VAWA petitioners.  To satisfy the

rule, the VAWA petitioner must demonstrate "extraordinary circumstances or extreme hardship to the alien's child." The Attorney General, through her designee the Board of Immigration Appeals ("BIA"), concluded that Sarkisov did not meet that standard. Sarkisov petitioned for review. As a matter of first impression, we conclude that we have jurisdiction to review the BIA's determination that Sarkisov did not demonstrate extraordinary circumstances. But because the BIA's determination was not erroneous, we **DENY** the petition for review.

## I. BACKGROUND

### A. Statutory Background

This case concerns motions to reopen removal proceedings. 8 U.S.C. § 1229a(c)(7)(C)(iv). "'[T]o ensure a proper and lawful disposition' of immigration proceedings," Congress has created a procedural mechanism allowing noncitizens to seek relief even after a final order of removal has been entered. *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)). In a "motion to reopen," the noncitizen "asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada*, 554 U.S. at 12 (citation omitted). In general, motions to reopen must be filed within ninety days of "entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). However, there are two statutory exceptions to the timing rules.[1] One is an exception for filing asylum petitions. *Id.* § 1229a(c)(7)(C)(ii). The other, relevant here, is a "[s]pecial rule for battered spouses, children, and parents." *Id.* § 1229a(c)(7)(C)(iv). Under this special rule, an individual seeking to reopen his proceedings to obtain cancellation of removal pursuant to VAWA has a more lenient one-year period to file. *Id.* § 1229a(c)(7)(C)(iv)(III). Beyond that time period, "the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child." *Id.*

---

[1]The timing rules are subject to equitable tolling. *See Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008). The BIA may also reopen a removal proceeding *sua sponte* at any time. *See* 8 C.F.R. § 1003.2(a).

**B. Factual Background**

Sarkisov is a citizen of Russia. Admin. R. ("AR") at 3 (BIA Order). In 2005, the Department of Homeland Security began removal proceedings, charging him with removability based on his presence in the United States without admission or parole. *Id.* at 397–98 (Notice to Appear). Sarkisov conceded removability but sought relief on other grounds. *See id.* at 235 (Mot. to Change Venue). Initially, he sought asylum based on his experiences as an Armenian living in Russia. *Id.* at 372, 377, 381–83 (Asylum Application). Later, he married an American citizen, who petitioned for an immigrant visa on his behalf. *Id.* at 235 (Mot. to Change Venue). Sarkisov asked for voluntary departure, so that he could leave the country while the visa was processed. *Id.* In late 2012, the immigration judge ("IJ") granted voluntary departure, *id.* at 196 (Voluntary Departure Order), but Sarkisov did not leave the country, *id.* at 3 (BIA Order). As a result, Sarkisov became subject to a final order of removal. *See id.* at 196 (Voluntary Departure Order).

About six-and-a-half years later, Sarkisov moved to reopen his removal proceedings. *Id.* at 58 (Mot. to Reopen). The basis for the motion to reopen was an approved visa petition based on domestic violence that Sarkisov suffered at the hands of his former, now-deceased wife. *Id.* at 59–60 (Mot. to Reopen). He argued that the circumstances supporting his visa petition were also "extraordinary circumstances" supporting extension of the deadline to file a motion to reopen his removal proceedings. *Id.* at 67–71 (Mot. to Reopen). Sarkisov described that his former wife engaged in verbal and physical abuse and that she leveraged his immigration status to prevent him from leaving the relationship. *Id.* at 119–34 (Sarkisov Decl.). He also appended a psychological report, which diagnosed him with general anxiety disorder resulting largely from the alleged domestic abuse. *Id.* at 144–55 (Psych. Rep.). The Department of Homeland Security did not oppose the motion to reopen. *Id.* at 48 (IJ Order).

An IJ concluded that there were no "extraordinary circumstances" warranting an exercise of discretion to reopen the removal proceedings. *Id.* at 48–49 (IJ Order). The BIA affirmed. *Id.* at 3–4 (BIA Order). The BIA reasoned that "although the abuse and resulting psychological effects could explain some reasonable delay in filing the motion to reopen, they did not constitute extraordinary circumstances excusing the 6-year delay between the finality of the

order of removal and the filing of the motion to reopen." *Id.* The BIA acknowledged that Sarkisov's visa petition was approved only one-and-a-half years before filing of the motion to reopen, but reasoned that his psychological condition did not qualify as an "extraordinary circumstance[]" justifying his delay in filing the motion to reopen. *Id.* at 4. The BIA also rejected Sarkisov's arguments for equitable tolling and *sua sponte* reopening. *Id.*

Sarkisov filed a timely petition for review of the BIA's final decision, as well as a motion to stay his removal from the United States. A panel of this court denied his unopposed motion to stay removal because his motion failed to demonstrate his equitable entitlement to such relief. *Sarkisov v. Bondi*, 138 F.4th 976, 980 (6th Cir. 2025). The merits of Sarkisov's petition are now before us.

## II. JURISDICTION

The Attorney General argues that we lack jurisdiction to review the BIA's denial of Sarkisov's motion to reopen his immigration proceedings. Our court has not yet considered whether we have jurisdiction to review a BIA determination that a petitioner failed to present "extraordinary circumstances" warranting the Attorney General's exercise of discretion to reopen a VAWA applicant's removal proceedings. 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).

Our jurisdiction to review decisions of the BIA is "sharply circumscribed" by Congress. *Patel v. Garland*, 596 U.S. 328, 332 (2022). Although Congress has generally granted circuit courts the jurisdiction to review "final order[s] of removal," 8 U.S.C. § 1252(a)(1), two kinds of removal orders have been carved out, *id.* § 1252(a)(2)(B). First, a federal court may not review "any judgment regarding the granting of relief" under certain sections. *Id.* § 1252(a)(2)(B)(i). Second, as relevant here, a federal court may not review "any other decision or action of the Attorney General . . . the authority for which is specified . . . to be in the discretion of the Attorney General." *Id.* § 1252(a)(2)(B)(ii). Against these limitations, Congress has created a "safe harbor" preserving our ability to review "constitutional claims or questions of law." *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021) (quoting 8 U.S.C. § 1252(a)(2)(D)).

We have previously set forth a rubric for determining whether an issue falls within this safe harbor for judicial review. *See id.* at 1148–49. The safe harbor allows us to review purely

legal questions, such as whether the BIA properly interpreted a statute. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024). We may also review petitions presenting mixed questions of law and fact, i.e., whether the BIA correctly applied the law to undisputed facts. *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). But we may not review petitions presenting pure questions of fact, such as whether a testifying witness was credible. *Patel*, 596 U.S. at 333. And we may not review purely discretionary decisions, such as when the BIA declines to reopen a removal order *sua sponte*. *See, e.g.*, *Lopez v. Garland*, 990 F.3d 1000, 1003 (6th Cir. 2021). When determining whether a petition raises a reviewable or non-reviewable issue on appeal, our focus is on the "*substance* of the immigrant's claim, not the *name* the immigrant places on it." *Singh*, 984 F.3d at 1149. "If a claim amounts to nothing more than a challenge to the agency's discretionary and fact-finding exercises cloaked as a question of law, we have no jurisdiction." *Id.* (citation modified).

Sarkisov argues that whether "extraordinary circumstances" warrant waiver of the deadline for reopening immigration proceedings is a mixed question of law and fact. 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).**[2]** We agree. Our determination on this issue is guided by a pair of recent Supreme Court cases, *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), and *Wilkinson*, 601 U.S. 209. *Guerrero-Lasprilla* concerned an appeal from the denial of a motion to reopen removal proceedings. 589 U.S. at 225. The petitioner argued to the BIA that the deadline for filing his motion should be equitably tolled. *Id.* at 225–26. The BIA refused to equitably toll the deadline because the petitioner failed to demonstrate "the requisite due diligence." *Id.* at 226. On appeal, the question presented was whether the federal courts have jurisdiction to review the BIA's due-diligence determination. *Id.* The Supreme Court held that federal courts had jurisdiction to review the due-diligence determination because it involved the application of a legal standard to undisputed facts, otherwise known as a mixed question of law and fact. *Id.* at 228. Because a mixed question is a "question of law," there was jurisdiction to review it under the safe harbor created by 8 U.S.C. § 1252(a)(2)(D). *Id.* at 227.

---

**[2]**Sarkisov apparently assumes that the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(B)(ii) applies in the instant case. D. 28 (Sarkisov Br. at 17, 20–21). We, too, assume without deciding that the bar applies. We need not reach the issue because we conclude that review is permitted by the safe-harbor provision, 8 U.S.C. § 1252(a)(2)(D).

Four years later, in *Wilkinson*, the Court turned to a provision of the immigration statutes that confers discretion on the BIA to cancel a final order of removal if certain circumstances are met, including if the noncitizen "'establishes that removal would result in exceptional and extremely unusual hardship to [the alien's] spouse, parent, or child,' who is a U.S. citizen or lawful permanent resident." 601 U.S. at 213 (quoting 8 U.S.C. § 1229b(b)(1)(D)). The Court decided that this statutory provision also created a "legal standard" that the BIA must "apply to a set of established facts." *Id.* at 217; *accord Singh*, 984 F.3d at 1150. Thus, "the application of the . . . standard to a given set of facts [wa]s reviewable as a question of law under § 1252(a)(2)(D)." *Wilkinson*, 601 U.S. at 217.

There is no meaningful difference between the legal standards analyzed in *Wilkinson* and *Guerrero-Lasprilla* and the legal standard governing eligibility for a discretionary waiver of the time limitation for filing a motion to reopen based on a VAWA-visa petition. Just like "due diligence" and "exceptional and extremely unusual hardship," "extraordinary circumstances or extreme hardship to the alien's child," 8 U.S.C. § 1229a(c)(7)(C)(iv)(III), is a legal standard that, when applied to settled facts, presents a mixed question, which the jurisdictional bar on immigration appeals does not limit our ability to decide. Our conclusion on this issue comports with those of the only two circuit courts to analyze the issue carefully after *Guerrero-Lasprilla*. *Pena-Lopez v. Garland*, 33 F.4th 798 (5th Cir. 2022); *Magana-Magana v. Bondi*, 129 F.4th 557 (9th Cir. 2025). The Attorney General's citations to cases from the First, Second, Third, Fourth, and Seventh Circuits do not persuade.[3] So, the judicial-review bar of 8 U.S.C. § 1252(a)(2)(B) does not preclude our review.

---

[3]The First, Second, and Seventh Circuit cases, *Twum v. Barr*, 930 F.3d 10 (1st Cir. 2019), *Mansaray v. Barr*, 771 F. App'x 128 (2d Cir. 2019), and *Joseph v. Lynch*, 793 F.3d 739 (7th Cir. 2015), were all decided before *Guerrero-Lasprilla*. As this court has previously recognized, *Guerrero-Lasprilla* has "cause[d] us to reassess our jurisdiction" over mixed questions, even when they contain fact-dependent elements. *Singh*, 984 F.3d at 1150. The Third Circuit, in *Yasin v. Attorney General of the United States*, 20 F.4th 818 (3d Cir. 2021), failed to grapple with *Guerrero-Lasprilla* at all. And the Fourth Circuit's decision in *Ezema v. Garland*, 849 F. App'x 50 (4th Cir. 2021), fails to mention *Guerrero-Lasprilla*, is sparsely reasoned, and does not clarify the grounds for the BIA's determination.

The Attorney General raises a further argument, however, which was not carefully considered by those prior circuit cases.**4** She argues that "whether the 'circumstances' of an alien filing an untimely VAWA motion to reopen are 'extraordinary' is not a 'legal standard' because it involves no legal principles, no guidelines, and no measurable test at all – just an unbounded judgment call." D. 30 (AG Br. at 15). The Attorney General argues, therefore, that the statute is so standardless that it indicates an intent by Congress to commit the determination to agency discretion "absolutely." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see* 5 U.S.C. § 701(a)(2). We disagree. What constitute "extraordinary circumstances" warranting waiver of a filing deadline is not so unmanageable that it evades review. *Heckler*, 470 U.S. at 830.

To begin, both *Guerrero-Lasprilla* and *Wilkinson* themselves suggest that a standard can be judicially manageable, even when it confers significant discretion to the agency and requires close engagement with the facts. In *Guerrero-Lasprilla*, for example, the question was whether the noncitizen exercised "due diligence." Although due diligence is also a loosely defined concept, that did not prevent the Court from concluding that it presented a legal standard that could be applied. Likewise, in *Wilkinson*, the standard was "exceptional and extremely unusual hardship." 589 U.S. at 227. The Court similarly had no problem concluding that such a standard, although it might "require[] a court to immerse itself in facts," was still a legal standard. 601 U.S. at 222. The Court's answer to the difficulty defining these statutes was not to commit a category error. Instead, the Court accommodated the significant breadth of the statute by providing that when a "mixed question is primarily factual, th[e] review is deferential." *Id.* at 225.

Our case law also suggests that this legal standard is susceptible to meaningful review. After *Wilkinson*, we interpreted the legal standard of "exceptional and extremely unusual

---

**4**The Attorney General characterizes the question of whether a statute confers unreviewable discretion to the agency as jurisdictional. Our case law is not entirely consistent on this point. *Compare Madison-Hughes v. Shalala*, 80 F.3d 1121, 1127 (6th Cir. 1996) (treating the issue as jurisdictional), *with Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014) (treating the issue on the merits). And a circuit split also exists on this question. *Compare Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (merits), *and Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274 (7th Cir. 2017) (same and collecting cases), *with Lunney v. United States*, 319 F.3d 550, 559–60 (2d Cir. 2003) (subject-matter jurisdiction), *and Angelex Ltd. v. United States*, 723 F.3d 500, 505–06 (4th Cir. 2013) (same), *and Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1214 (11th Cir. 2015) (same). We need not resolve this question today.

hardship." *Moctezuma-Reyes*, 124 F.4th at 422–23 (quoting 8 U.S.C. § 1229b(b)(1)(D)). In *Moctezuma-Reyes*, we turned first to dictionary definitions for the words used in the statute and then assessed how those words modified the concept of hardship in the context of a noncitizen who would be deported and separated from their family. *Id.* at 421–22. The Attorney General points out that *Wilkinson* had already indicated that the standard interpreted in *Moctezuma-Reyes* "was a reviewable standard," so our court did not directly address the question of whether the standard committed discretion to the agency. D. 30 (AG Br. at 19). But our ability to parse the standard implies that the law was not so standardless that it committed all discretion to the agency.

Furthermore, 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) does not obliquely suggest that the determination of whether extraordinary circumstances apply is itself in the discretion of the Attorney General. Compare this statutory provision with the one granting the Attorney General discretion to waive a ground of inadmissibility, which we analyzed in *Rahman v. Bondi*, 131 F.4th 399 (6th Cir. 2025). That statute, unlike this one, provides that the decision to waive rests on whether it is "established *to the satisfaction of the Attorney General* that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). We observed that "[t]he highlighted language signals 'that the [extreme-hardship] determination is for' the Attorney General (and those to whom the Attorney General has delegated this task)." *Rahman*, 131 F.4th at 407 (alteration in original) (quoting *Pierce v. Underwood*, 487 U.S. 552, 559 (1988)). Because the statute calls on the Attorney General to "decide if the 'information' that an immigrant introduces suffices to meet *their* 'demands,'" the statute "conveys that the Attorney General's designees must make an 'inherently discretionary' call." *Id.* (citations omitted). This statutory feature distinguishes this waiver provision from the similar provision in the asylum statute, which we later reviewed in *Moctezuma-Reyes*.

Section 1229a(c)(7)(C)(iv)(III) is more comparable to the one analyzed in *Wilkinson* and *Moctezuma-Reyes*. The statute provides that "the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child." 8 U.S.C.

§ 1229a(c)(7)(C)(iv)(III). This is a two-part framework.[5] *See Wilkinson*, 601 U.S. at 212–13 (outlining two-part framework as applied to 8 U.S.C. §§ 1229b(a)–(b)). It involves a legal determination of whether the noncitizen has satisfied the legal standard of "extraordinary circumstances or extreme hardship to the alien's child." 8 U.S.C. § 1229a(c)(7)(C)(iv)(III); *see Wilkinson*, 601 U.S. at 212. And it involves a discretionary determination by the BIA that a waiver is warranted. 8 U.S.C. § 1229a(c)(7)(C)(iv)(III); *see Wilkinson*, 601 U.S. at 212. In short, the statute says that the BIA may exercise discretion in a case that meets a certain legal standard. The presence of the secondary, discretionary component does not render that legal standard also discretionary. The statute at issue in *Wilkinson* and *Moctezuma-Reyes* operated the same way. The noncitizen needed to prove both that he was eligible for cancellation of removal and that his case "merit[ed] a favorable exercise of discretion." *Wilkinson*, 601 U.S. at 213 (quoting 8 U.S.C. § 1229a(c)(4)(A)). Although it was undisputed that the ultimate discretionary decision was not reviewable, "the threshold question whether a noncitizen is statutorily eligible for cancellation of removal requires a court to assess whether an IJ correctly applied the statutory standard to a given set of facts." *Id.* at 221. The same is true here.

The Attorney General argues that this standard is different from the ones previously analyzed, because the concept of "extraordinary circumstances" is simply so discretionary that it cannot be analyzed. The Attorney General draws a comparison to our precedent holding that the BIA's denial of a request to reopen proceedings *sua sponte* is not reviewable, even though the BIA has developed a doctrine of granting such requests in "exceptional situations." *Harchenko v. INS*, 379 F.3d 405, 411 (6th Cir. 2004); *see Lopez v. Garland*, 990 F.3d 1000, 1003 (6th Cir. 2021); *In re G-D-*, 22 I. & N. Dec. 1132, 1133–34 (B.I.A. 1999).[6] But *Harchenko* is

---

[5]The other two circuits to consider the reviewability of decisions involving 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) applied the two-part framework. *See Magana-Magana v. Bondi*, 129 F.4th 557, 569 (9th Cir. 2025); *Pena-Lopez v. Garland*, 33 F.4th 798, 805 (5th Cir. 2022).

[6]The Attorney General notes that we have found that review is available when regulations or precedential BIA opinions set forth legal tests and standards that facilitate our review. The Attorney General points to our decision in *Denko v. INS*, 351 F.3d 717 (6th Cir. 2003), but that decision does not support her position. There, we were tasked with deciding whether a *regulation* creating a summary-affirmance procedure for immigration decisions was unreviewable under *Heckler*. *Id.* at 731. The *Heckler* argument was "doubtful" because the regulation itself set forth a definite framework for when those procedures could be used. *Id.* at 731–32. So, *Denko* tells us very little about when a statute provides judicially manageable standards. The Attorney General also points to our unpublished decision in *Duruji v. Lynch*, 630 F. App'x 589 (6th Cir. 2015). That opinion also provides little support. In *Duruji*,

distinguishable because it addressed different judicial-review provisions.  Because of the timing of the immigration proceedings at issue, that case "[wa]s governed by former § 106 of the INA, as amended by the IIRIRA's transitional rules[,]" not by the then-new judicial-review provision codified at 8 U.S.C. § 1252.  379 F.3d at 408–09.  Indeed, *Harchenko* predates Congress's enactment of the safe-harbor provision, 8 U.S.C. § 1252(a)(2)(D).  *See* 119 Stat. 310 (2005).  As we noted above, the safe-harbor provision gives us authority to review questions of law—such as application of the "extraordinary circumstances" standard to the facts here.  *See Wilkinson*, 601 U.S. at 217.

Because the meaning of "extraordinary circumstances" is a legal question, we "resolve its meaning on our own."  *See Moctezuma-Reyes*, 124 F.4th at 420 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92 (2024)).  To determine the meaning of the statute, we start with the dictionary.  Black's Law Dictionary defines "extraordinary circumstances" as a "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." *Circumstance*, BLACK'S LAW DICTIONARY (12th ed. 2024).  That accords with the ordinary definition of each of those words.  Extraordinary means "going beyond what is usual, regular, or customary" or "exceptional to a very marked extent."  *Extraordinary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/extraordinary; *see Extraordinary*, Oxford English Dictionary, https://www.oed.com/dictionary/extraordinary_adj?tab=meaning_and_use#4874525 ("Of a kind not usually met with; exceptional; unusual; singular" or "Exceeding what is usual in amount, degree, extent, or size"); *see also Moctezuma-Reyes*, 124 F.4th at 421 (defining "exceptional" as "rare" or "deviating from the norm" (citation modified)).  Meanwhile, a "circumstance" is "a condition, fact, or event accompanying, conditioning, or determining another."  *Circumstance*, Merriam-Webster, https://www.merriam-webster.com/dictionary /circumstances.

---

we considered whether a request for an administrative closure (similar to a continuance) was reviewable.  *Id.* at 591–92.  We concluded that the "decision to temporarily continue proceedings is well within the competence of the courts to consider."  *Id.* at 592.  To be sure, we noted that the BIA had set forth "straightforward standards for evaluating when administrative closure is appropriate," but those standards were "nonexhaustive."  *Id.*  Indeed, we proceeded to review whether the BIA erred by concluding that the IJ did not abuse its discretion when it found that "good cause" supported the administrative closure.  *Id.* at 593.

What kind of circumstances are extraordinary?  The statutory provision might be satisfied in at least two ways, and a review of recent BIA decisions applying that standard indicate that both are sometimes applied.  "Extraordinary circumstances" could refer to a situation especially warranting reopening because, for example, the abuse suffered by the petitioner is so severe that it would be unfair to deprive this petitioner of an opportunity to seek relief.  *See In Re: Tatiara Pinho-De Oliveira*, AXXX XX2 495 - HAR, 2018 WL 3969122, at *1 (B.I.A. June 6, 2018).  "Extraordinary circumstances" could also refer to a situation that prevents the petitioner from filing a timely petition.  For example, a hurricane might have destroyed the petitioner's home days before the filing deadline, preventing her from filing a timely motion to reopen the proceedings.  Or a petitioner might be subject to severe abuse or manipulation by the violent spouse that prevented him from filing a timely motion to reopen.  The BIA often uses the "extraordinary circumstances" rule in this way.  *See In Re: Aminot Adewunmi-Dunn,* AXXX XX3 818 - NEW, 2017 WL 3382761, at *1 (B.I.A. May 26, 2017) (concluding that "the evidence offered with the instant motion does not demonstrate that exceptional circumstances prevented the timely filing of an application for VAWA-related relief"); *In Re: Martin Perez-Sanchez*, AXXX-XX9-729 - GUA, 2018 WL 6618260, at *2 (B.I.A. Oct. 5, 2018).

We do not think that the statute limits the application of the Attorney General's discretion to one circumstance or the other.  Compare this statute to the asylum statute, which allows the Attorney General to consider an asylum application when there are "extraordinary circumstances *relating to the delay* in filing an application within the period specified."  8 U.S.C. § 1158(a)(2)(D) (emphasis added).  And to another provision of § 1229a, which authorizes rescission of an order of removal filed in absentia if the noncitizen files a motion to reopen within 180 days that "demonstrates that the failure to appear was because of exceptional circumstances."  8 U.S.C. § 1229a(b)(5)(C)(i).  Here, by contrast, the statute does not directly link the extraordinary circumstance to the delay or other failure.  So, we can infer that Congress did not intend to limit extraordinary circumstances to those that directly explain a delay.

We have jurisdiction to review the BIA's application of the "extraordinary circumstances" standard to the facts when the BIA concludes that the standard is not met.  In reviewing the BIA's determination, we can draw guidance from related statutes and regulations,

as well as from our own case law on equitable tolling. In the context of late-filed asylum petitions, the Attorney General has issued regulations defining what might be considered extraordinary, including serious illness or disability, legal disability, ineffective assistance of counsel, and death or serious illness or incapacity of a legal representative or an immediate family member. 8 C.F.R. § 1208.4(a)(5). Even though many courts have found that ultimate determination to be unreviewable, because the extraordinary circumstance must be "demonstrate[d] to the satisfaction of the Attorney General," *id.*; *see Rahman*, 131 F.4th at 408 (collecting cases), the criteria laid out in regulations provide helpful guideposts to determine what constitutes an extraordinary circumstance explaining a late filing.

We can also draw on our expertise handling filing delays as federal judges. Indeed, the phrase "extraordinary circumstances" parrots the test we use for equitable tolling. When deciding whether to excuse noncompliance with a statutory deadline, we ask whether the petitioner has shown (1) "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The BIA has adopted this rule to decide whether to equitably toll the deadline to appeal. *In re Morales-Morales*, 28 I. & N. Dec. 714, 717 (B.I.A. 2023). In that context, the BIA has said that an "extraordinary circumstance may include those situations where reasonable expectations about an event's occurrence are interrupted." *Id.* We, along with the First Circuit, recently reviewed whether an extraordinary circumstance prevented timely filing such as to require equitable tolling. *See, e.g.*, *Chaudhary v. Bondi*, No. 24-3890, 2025 WL 1420925 (6th Cir. May 16, 2025); *Diaz-Valdez v. Garland*, 122 F.4th 436 (1st Cir. 2024) (reversing the BIA's determination that a petitioner failed to demonstrate an extraordinary circumstance for an untimely filed appeal). Yet while precedent can guide the determination of whether a circumstance is "extraordinary," courts must remain mindful that what warranted treating circumstances as ordinary in one case, may, with added nuances, warrant treating those found in another case as extraordinary. *See Holland*, 560 U.S. at 649–50.

## III. MERITS

Having concluded that we can review the BIA's determination that Sarkisov did not "demonstrate[] extraordinary circumstances" that might justify an exercise of discretion to reopen his removal proceedings, we turn to the merits of Sarkisov's appeal. Because this is a highly factual mixed question of law and fact, our review is deferential to the agency. *Wilkinson*, 601 U.S. at 225; *Moctezuma-Reyes*, 124 F.4th at 423.

Before the BIA, Sarkisov contended that the "cumulative psychological effects of the abuse from his former wife constitutes extraordinary circumstances." AR at 3 (BIA Order). The BIA observed that "the abuse and resulting psychological effects could explain some reasonable delay in filing the motion to reopen," but "they did not constitute extraordinary circumstances excusing the 6-year delay between the finality of the order of removal and the filing of the motion to reopen." *Id.* at 3–4. Even starting the clock from when Sarkisov's VAWA petition was approved, the BIA concluded that Sarkisov had not "established how the psychological effects of the abuse constituted extraordinary circumstances delaying his filing of the motion almost 1½ years after the self-petition was approved." *Id.* at 4.

On appeal, Sarkisov argues that the BIA "ignored and/or failed to give the proper weight to the fact of Petitioner's ongoing mental trauma as a direct result of his abusive relationship," which affected his ability to timely file the motion for reopening.[7] D. 28 (Sarkisov Br. at 21). He points out that he provided an evaluation from a doctor, who diagnosed him with moderate-to-severe generalized anxiety disorder. *Id.* at 23. The BIA squarely accounted for "the abuse and resulting psychological effects" of his prior relationship and acknowledged that they could justify some delay. AR at 3–4 (BIA Order). But here, the delay lasted more than six years, including a year-and-a-half since the approval of his VAWA self-petition. Sarkisov contends that the BIA failed to acknowledge the lasting effects of the trauma. But on these facts, with

---

[7]On appeal, Sarkisov focuses much of his argument on disputes with the IJ's findings. Where, as here, "the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009), *abrogated on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Accordingly, we have no cause to consider Sarkisov's complaints concerning the IJ's references to his fluency in English and retention of multiple immigration attorneys, because it is not apparent that the BIA relied on them. In any event, these considerations were apparent from the record, and we agree that they were not inappropriate considerations.

such a lengthy delay, we cannot conclude that the BIA was unreasonable in deciding that reopening was unwarranted.

Next, Sarkisov argues that the BIA imposed an impermissibly high bar, considering the intent of VAWA to assist survivors of domestic violence.  D. 28 (Sarkisov Br. at 26).  Still, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam).  Congress chose to allow VAWA petitioners to reopen their proceedings but limited the filing of untimely reopening motions to "extraordinary circumstances."  "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id.* at 526.

Lastly, Sarkisov suggests that his circumstances were extraordinary because he suffered from "battery or extreme cruelty," a standard applicable to reopening of a removal order entered in absentia.  *See* 8 U.S.C. § 1229a(b)(5)(C), (e)(1); D. 28 (Sarkisov Br. at 19–20, 26).[8]  In the context of motions to reopen removal orders filed in absentia, Congress has set forth guidance on what constitutes "exceptional circumstances" excusing failure to appear.  There, Congress defines "exceptional circumstances" as those "beyond the control of the alien," including "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances."  8 U.S.C. § 1229a(e)(1).  Sarkisov argues that because he might meet the criteria for "exceptional" circumstances he must also meet the criteria for "extraordinary" ones.  We do not think that follows in this context.  For one, some degree of battery is common in many VAWA self-petitions, but would likely be unusual in the ordinary motion for reopening an in-absentia order.  Sarkisov's proposed reading of the statute here would tend to eliminate the requirement that the circumstance be extraordinary in the context of a VAWA petition.  There may be certain circumstances in which the abuse or trauma is so severe as to be characterized as extraordinary, even in this context. *Cf. Moctezuma-Reyes*, 124 F.4th at

---

[8]Sarkisov briefly suggests that the BIA in fact applied the "battery or extreme cruelty" standard.  D. 28 (Sarkisov Br. at 26).  Yet, nothing in the BIA's order suggests that it applied this standard.

423 (considering whether a family member "will suffer hardship that's substantially different from or greater than that which normally results from a loved one's deportation"). As the BIA recognized, Sarkisov suffered "abuse and resulting psychological effects," but we cannot conclude that the BIA erred by finding that those did not "constitute extraordinary circumstances excusing the 6-year delay." AR at 3–4 (BIA Order).

## IV. CONCLUSION

For these reasons, we **DENY** the petition for review.