RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NUZAIRA MAHFUZ RAHMAN,

                                          *Petitioner*,

      *v.*

PAMELA BONDI, Attorney General,

                                          *Respondent*.

No. 23-3608

─────────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 076 492 135.

Decided and Filed:  March 13, 2025

Before:  THAPAR, BUSH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Blake P. Somers, BLAKE P. SOMERS LLC, Cincinnati, Ohio, for Petitioner. Elizabeth K. Ottman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge.  The immigration laws list many reasons why an immigrant may not be admissible into the United States, but they also give the Attorney General discretion to waive some of these grounds for inadmissibility.  *See* 8 U.S.C. § 1182(a)(9)(B)(v), (i)(1).  To obtain this type of waiver, an immigrant must show "to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship" to a qualifying relative.  *Id.* § 1182(a)(9)(B)(v); *see also id.* § 1182(i)(1).  The Board of Immigration

Appeals in this case held that Nuzaira Rahman had failed to establish the required hardship and thus denied her requested waivers. Rahman asks us to review the Board's hardship conclusion.

Yet the immigration laws broadly deprive us of jurisdiction to review these discretionary denials. *See id.* § 1252(a)(2)(B). Rahman responds that the laws allow us to review "questions of law" even in this waiver context. *Id.* § 1252(a)(2)(D). She adds that the Supreme Court has held that the Board's hardship finding in a different context falls within this jurisdictional safe harbor. *See Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). Unlike the hardship provisions in this case, though, the hardship provision in *Wilkinson* did not clarify that an immigrant must prove hardship "to the satisfaction of the Attorney General." We must give effect to this language. It shows that Congress committed the hardship inquiry to agency discretion in the waiver context. We thus lack jurisdiction over the Board's hardship conclusion and dismiss Rahman's petition for review.

I

Rahman was born in Bangladesh. Between 1992 and 2004, she and her husband, Abrar Haque, had five children in the United States. Haque is a U.S. citizen, and the family has lived in northeast Ohio during much of their lives.

The record leaves unclear when Rahman and Haque married. Rahman testified that they first married in a "religious ceremony" in Bangladesh in 1992. Admin. R. (A.R.) 41, 341. But other evidence suggests that Haque had a different wife from 1992 to 1996. Rahman also testified that the couple civilly married "over the phone" in 1996 while she was in the United States and Haque was in Bangladesh. A.R. 41, 341, 350–51, 427. Although they possessed a Bangladesh marriage certificate from that year, U.S. authorities could not find any Bangladesh records of this marriage and concluded that the certificate was fraudulent. In 2017, the couple obtained an Ohio marriage license.

Rahman has been enmeshed in immigration proceedings in the United States for nearly three decades. She first entered the country in 1992 on the heels of her claimed religious marriage to Haque. Rahman obtained an "H-4" nonimmigrant visa based on that alleged marriage, but she remained in the country for several years after this visa expired. In 1998, she

visited Bangladesh. She twice tried to reenter the United States the same year. But border agents stopped her each time. She thus lived in Bangladesh between 1998 and 2000.

During this time, U.S. immigration authorities took two contradictory actions regarding Rahman's immigration status. After one of her attempts to reenter the United States, the authorities placed her in removal proceedings. She did not attend her hearing, and an immigration judge ordered her removed in her absence in December 1998. Around the same time, Haque used their 1996 marriage certificate to seek a green card for Rahman. Unaware of the removal proceedings, the U.S. Citizenship and Immigration Services approved this petition. Rahman obtained lawful-permanent-residence status and came back to the country in 2000. *See Rahman v. Napolitano*, 385 F. App'x 540, 541 (6th Cir. 2010). She applied to become a U.S. citizen four years later. *See id.*

While her naturalization application remained pending, the government charged Rahman and her husband with federal offenses. *See id.* In 2006, a jury convicted Haque of dozens of financial crimes, and the court sentenced him to twelve years' imprisonment. *See United States v. Haque*, 315 F. App'x 510, 517 (6th Cir. 2009). The next year, Rahman pleaded guilty to using a social security number that she had procured by providing false information to the Commissioner of Social Security. *See* 42 U.S.C. § 408(a)(7)(A). She had obtained a social security number back in 1992. She then obtained a second number in 2000 by lying about whether she had previously received one. She used this second number to obtain an Ohio driver's license. The district court sentenced Rahman to two years' probation for this offense.

This conviction again brought Rahman to the attention of the immigration authorities. They initiated removal proceedings against her in 2008. The U.S. Citizenship and Immigration Services also denied her naturalization application the same year. The parties engaged in protracted litigation in the removal proceedings for over a decade.

In 2019, an immigration judge ultimately ordered Rahman removed to Bangladesh and denied her requests for relief. Rahman had applied for adjustment of status under 8 U.S.C. § 1255(a). But this application required her to be "admissible," *id.*, and the immigration judge had found her removable (and hence inadmissible) on two grounds. First, the judge found

Rahman removable because she had spent over a year in the United States illegally in the 1990s and had sought readmission within ten years of her prior removal. *See id.* § 1182(a)(9)(B)(i)(II). Second, the judge found Rahman removable because she had fraudulently failed to disclose her 1990s residency in the United States in her application to become a lawful permanent resident in 2000. *See id.* § 1182(a)(6)(C)(i).

The immigration judge had the power to grant Rahman a "waiver" of these grounds of inadmissibility if the refusal to admit her "would result in extreme hardship" to her spouse. *Id.* § 1182(a)(9)(B)(v), (i)(1). But the judge refused to grant the waivers. The judge first found that Rahman had not entered a lawful marriage to Haque until their Ohio marriage in 2017. Because this marriage occurred after the close of the hearing, the judge reasoned, Haque was not a qualifying relative. Regardless, the judge next held that Rahman's removal from the country would not cause him extreme hardship. The judge reasoned that three of the couple's children were adults and that Haque had family in the country who could help him raise the two remaining teenagers. Lastly, the judge explained that Rahman would not warrant a favorable exercise of discretion. The judge found that Rahman had given "inconsistent and implausible testimony" and that she lacked credibility. A.R. 47–49. The judge also highlighted Rahman's lies on her various immigration applications.

The Board of Immigration Appeals dismissed Rahman's appeal. The Board agreed with the immigration judge that Rahman was not entitled to the inadmissibility waivers because she had failed to show extreme hardship to Haque. The Board thus opted not to reach the immigration judge's other reasons for denying these waivers.

II

Rahman now petitions our court for review. To recap, immigration judges (acting on the Attorney General's behalf) have the authority to adjust the status of some immigrants to "lawfully admitted for permanent residence[.]" 8 U.S.C. § 1255(a); *see also Patel v. Garland*, 596 U.S. 328, 332 (2022). To qualify for this discretionary relief, immigrants must be "admissible" into the country. 8 U.S.C. § 1255(a). Here, though, the parties agree that Rahman was inadmissible because she had obtained her permanent-resident status through fraud, *see id.*

§ 1182(a)(6)(C)(i), and because she had sought readmission into the country within ten years of her prior removal after having unlawfully lived in this country for over a year, *see id.* § 1182(a)(9)(B)(i)(II).

The parties also agree that immigration judges (again exercising the Attorney General's authority) may "waive" these two inadmissibility grounds. The waiver clause for immigrants who are inadmissible because of their fraud (what we will call the "fraud waiver") allows judges to excuse this inadmissibility if an immigrant's qualifying spouse would suffer "extreme hardship":

> The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) in the case of an immigrant who is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien[.]

*Id.* § 1182(i)(1). The waiver clause for immigrants who are inadmissible because they seek readmission within ten years of having lived in the country illegally (what we will call the "readmission waiver") uses nearly identical language:

> The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien.

*Id.* § 1182(a)(9)(B)(v). Rahman asks us to review the denial of these two waivers in her case. As we shall explain, however, we largely lack jurisdiction to review her arguments.

## A

The immigration laws regulate the jurisdiction of courts in complex ways. To start, those laws contain jurisdiction-stripping provisions that bar our review of many agency actions. *See id.* § 1252(a)(2)(B)–(C). These jurisdiction-stripping provisions cover the waivers here. As a general matter, courts lack the "jurisdiction to review" "any judgment regarding the granting of

relief under" § 1182(i) (the fraud waiver) or "any other decision or action of the Attorney General . . . the authority for which is specified . . . to be in the discretion of the Attorney General" (which presumably includes the readmission waiver). *Id.* § 1252(a)(2)(B)(i)–(ii). As a specific matter, each waiver comes with its own specific jurisdiction-stripping provision. The clause after the fraud waiver indicates: "No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)." *Id.* § 1182(i)(2). And the readmission waiver itself includes this sentence: "No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause." *Id.* § 1182(a)(9)(B)(v).

Despite these broad jurisdiction-stripping provisions, the immigration laws also include a jurisdictional "safe harbor" that allows us to review certain questions even in this waiver context. *See Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021). This safe harbor tells us not to construe any of the jurisdiction-stripping provisions "as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with" the judicial-review section. 8 U.S.C. § 1252(a)(2)(D).

So how do the jurisdiction-stripping provisions and the safe harbor interact in this waiver context? They show that our review power turns on the "type of issue that an immigrant raises" in court. *Singh*, 984 F.3d at 1148. An immigrant might challenge the denial of a waiver in "four" ways. *Id.* Two of these ways trigger our jurisdiction, but the other two do not. *Id.* at 1148–49.

First, immigrants might assert a "purely legal" challenge. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024) (quoting *Singh*, 984 F.3d at 1149). They might, for example, dispute the Board's reading of the phrase "extreme hardship" in the waivers. 8 U.S.C. § 1182(a)(9)(B)(v), (i)(1). The safe harbor would allow us to review these sorts of "questions of law" underlying the denial of a waiver. *Id.* § 1252(a)(2)(D); *see Singh*, 984 F.3d at 1149.

Second, immigrants might assert a "purely factual" challenge. *Singh*, 984 F.3d at 1148 (quoting *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 393 (2018)). They might, for instance, contest the immigration judge's finding

that an immigrant's spouse did not have a certain health condition.  If an immigrant raised a factual challenge when seeking to overturn the denial of a waiver, the challenge would fall within the jurisdiction-stripping provisions.  After all, the language of these provisions bars our review of "any judgment regarding" the fraud waiver or any "decision or action" "regarding" both waivers, which would cover the factual findings underlying a denial.  8 U.S.C. §§ 1252(a)(2)(B)(i)–(ii); 1182(a)(9)(B)(v), (i)(2); *see Patel*, 596 U.S. at 336–40.  And because a factual challenge also would not fall within the safe harbor for "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), we would lack jurisdiction to review the challenge. *See Patel*, 596 U.S. at 347; *Singh*, 984 F.3d at 1149.

Third, immigrants might challenge the Board's discretionary decisions.  They might, for example, dispute the Board's ultimate conclusion whether to grant or deny a fraud or readmission waiver.  That sort of challenge would implicate a discretionary call because both waivers give the Attorney General "discretion" over whether to grant them.  8 U.S.C. § 1182(a)(9)(B)(v), (i)(1); *see Singh*, 984 F.3d at 1150–51.  So even if an immigrant has shown the required extreme hardship on the front end of the inquiry, the Board still has the power to deny a waiver on the back end.  *Cf. Singh*, 984 F.3d at 1149.  These ultimate discretionary choices would also trigger the jurisdiction-stripping provisions because they would be part of the "judgment" or "decision" denying a waiver.  8 U.S.C. §§ 1252(a)(2)(B)(i)–(ii); 1182(a)(9)(B)(v), (i)(2).  And challenges to the discretionary choices would not fall within the safe harbor because they would raise neither "constitutional claims" nor "questions of law[.]"  *Id.* § 1252(a)(2)(D).  As with factual challenges, then, we would lack jurisdiction over discretionary challenges.  *See Singh*, 984 F.3d at 1149.

Fourth, and finally, an immigrant might challenge the Board's answer to a so-called "mixed question of law and fact."  *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020) (quoting *U.S. Bank*, 583 U.S. at 394).  These types of challenges seek review of the Board's "application of a legal standard to undisputed or established facts."  *Id.* at 225.  To give one example, the Board resolves such a mixed question when it decides whether an immigrant's factual circumstances rise to the "due diligence" level required to permit equitable tolling for a motion to reopen removal proceedings.  *See id.* at 225–26.  The Supreme Court has held that we

may review these mixed issues because they qualify as "questions of law" under the jurisdictional safe harbor.  8 U.S.C. § 1252(a)(2)(D); *see Guerrero-Lasprilla*, 589 U.S. at 227–34.

B

Recall that the fraud and readmission waivers required Rahman to show that her spouse would suffer "extreme hardship" if she returned to Bangladesh.  8 U.S.C. § 1182(a)(9)(B)(v), (i)(1).  Rahman seeks our review of the Board's conclusion that the historical facts failed to show that her husband would suffer this "extreme hardship."  She argues that we have jurisdiction to review this challenge under the jurisdictional safe harbor on the ground that the Board resolved a "mixed" question of law and fact.  *See Guerrero-Lasprilla*, 589 U.S. at 227–34.

At first blush, the caselaw would seem to support Rahman's claim.  A different form of relief—cancellation of removal—requires immigrants to show (among other things) that their removal would cause "exceptional and extremely unusual hardship" to qualifying relatives.  8 U.S.C. § 1229b(b)(1)(D).  We and the Supreme Court have both held that the Board resolves a reviewable mixed question when it holds that a given set of facts do not satisfy this stringent hardship standard.  *See Wilkinson*, 601 U.S. at 221; *Singh*, 984 F.3d at 1150–53.  Although this hardship question may require the Board to "immerse itself in facts" because of the governing totality-of-the-circumstances test, the Supreme Court explained that mixed questions do not turn into fact questions whenever they require such a fact-intensive review.  *Wilkinson*, 601 U.S. at 222.  Rather, this test merely pointed to "a more deferential standard of review."  *Id.*

Should we extend *Wilkinson*'s logic from the cancellation-of-removal statute to the two waiver clauses?  No.  Congress made this extreme-hardship inquiry a discretionary question in the waiver context even if it is a mixed question in the cancellation-of-removal context.

*First*, the text compels this conclusion.  Each waiver clause allows the Attorney General to grant a waiver to an immigrant "if it is established *to the satisfaction of the Attorney General*" that the immigrant's qualifying relative would suffer extreme hardship.  8 U.S.C. § 1182(a)(9)(B)(v), (i)(1) (emphasis added).  The highlighted language signals "that the [extreme-hardship] determination is for" the Attorney General (and those to whom the Attorney

General has delegated this task). *Pierce v. Underwood*, 487 U.S. 552, 559 (1988); *see Singh*, 984 F.3d at 1148. So the language requires the Attorney General's designees to decide if the "information" that an immigrant introduces suffices to meet *their* "demands" and to remove *their* "doubt" over whether a relative meets the hardship test. 14 *Oxford English Dictionary* 503 (2d ed. 1989) (defining "satisfaction"). In other words, the language conveys that the Attorney General's designees must make an "inherently discretionary" call. *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005).

An analogy to a well-known contract principle reiterates this reading of the phrase "to the satisfaction." When a contract requires a promisor to perform to a promisee's "satisfaction," the contract gives the promisee discretion over whether the performance sufficed. *See* 13 *Williston on Contracts* § 38:21 (4th ed.), Westlaw (database updated May 2024); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1186 (7th Cir. 1996). The statutory language conveys the same idea. Indeed, if we failed to give the language this meaning, we would risk rendering it superfluous—something that courts strive to avoid. *See Corley v. United States*, 556 U.S. 303, 314 (2009).

*Second*, statutory structure and history support this reading. We normally presume that Congress "acts intentionally and purposely in the disparate inclusion or exclusion" of phrases across the same legislation. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). That presumption applies here. In expansive 1996 amendments to the immigration laws, Congress included the "to the satisfaction" language in the two waiver clauses (at issue in this case) but not in the cancellation-of-removal statute (at issue in *Wilkinson*). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, -577, -594, -639. We would disregard this seemingly intentional "disparate inclusion" and "exclusion" if we treated all three hardship elements as raising identical mixed questions that we review in the same way. *Cardoza-Fonseca*, 480 U.S. at 432 (citation omitted). In fact, the Supreme Court in *Wilkinson* already relied on this differential treatment. *See* 601 U.S. at 224. When holding that courts have jurisdiction to review the hardship determination in the cancellation-of-removal context, the Court explained that Congress had removed the "to the satisfaction" language from that

provision but kept it in other provisions. *See id.*; *see also Singh*, 984 F.3d at 1151–53. We complete the circle of the Court's logic by holding that we do not have jurisdiction to review a hardship finding when Congress has "retain[ed]" the discretionary language. *Wilkinson*, 601 U.S. at 224.

*Third*, analogous precedent confirms this point. The asylum statute requires immigrants to seek asylum within a certain time but allows the Attorney General to consider an untimely claim if an immigrant "demonstrates *to the satisfaction of the Attorney General*" that "extraordinary circumstances" barred a timely filing. 8 U.S.C. § 1158(a)(2)(D) (emphasis added). Most circuit courts have read this analogous "to the satisfaction" language as showing that the Attorney General makes an *unreviewable* "discretionary" decision when resolving whether extraordinary circumstances exist. *Vasile*, 417 F.3d at 768 (citing *Castellano-Chacon v. INS*, 341 F.3d 533, 543–44 (6th Cir. 2003)); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006); *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005). The Eleventh Circuit has also explained why this reasoning remains sound even after *Wilkinson*. *See A.P.A. v. U.S. Att'y Gen.*, 104 F.4th 230, 241 (11th Cir. 2024).

We acknowledge that the Ninth Circuit has interpreted the phrase "to the satisfaction of the Attorney General" differently from all other courts in that asylum context. *See Ramadan v. Gonzales*, 479 F.3d 646, 654–56 (9th Cir. 2007). It reasoned that this language merely indicated "*who*" should make the extraordinary-circumstances decision and did not vest discretion in the Attorney General. *Id.* at 655. Yet that view renders the language "mere surplusage" since other statutory text makes clear that the Attorney General gets to make this decision. *Ramadan v. Keisler*, 504 F.3d 973, 976 (9th Cir. 2007) (O'Scannlain, J., dissenting from the denial of rehearing en banc). We thus opt to follow the many other circuit courts that have interpreted this language. In sum, we lack jurisdiction over the Board's discretionary conclusion that Rahman's factual circumstances failed to rise to the level required to meet the extreme-hardship test.

C

Our jurisdictional holding deprives us of jurisdiction over Rahman's petition for review. She mostly challenges the Board's ultimate hardship decision on the ground that the Board placed too much emphasis on some evidence at the expense of other evidence. Yet the text of the waiver clauses leaves this evidentiary balancing for the Board.

That said, Rahman also argues that the immigration judge committed a "purely legal" error when the judge found her not credible. *Singh*, 984 F.3d at 1148 (quoting *U.S. Bank*, 583 U.S. at 393). She points out that the immigration laws instruct a judge to "[c]onsider[] the totality of the circumstances, and all relevant factors," when making credibility determinations. 8 U.S.C. § 1229a(c)(4)(C). According to Rahman, the judge in her case departed from this statutory mandate. But the judge did no such thing: her opinion quoted the "totality of the circumstances" language verbatim when describing the governing credibility standards. A.R. 44 (quoting 8 U.S.C. § 1229a(c)(4)(C)). And Rahman merely disputes the judge's alleged failure to emphasize a single factor when finding her not credible: the conduct of Rahman's non-attorney representative at the immigration hearing. Yet the Supreme Court has held that "credibility" determinations qualify as "unreviewable" findings of fact. *Wilkinson*, 601 U.S. at 225; *see Patel*, 596 U.S. at 339. And we have held that litigants cannot avoid the jurisdictional bar on a factual challenge by dressing up such a challenge in legal garb. *See Singh*, 984 F.3d at 1149. Rather, the "*substance*" of a claim matters—not the "*name*" put on it. *Id.* This rule dooms Rahman's argument. No matter the label she uses, she attacks the immigration judge's "credibility" finding. *Wilkinson*, 601 U.S. at 225. We lack jurisdiction over that factual challenge.

\* \* \*

The parties' briefing raised three other issues. Rahman challenges the immigration judge's independent decision that Haque was not a qualifying "spouse" under the two waiver clauses. 8 U.S.C. § 1182(a)(9)(B)(v), (i)(1). She also points out that she left the country for a month while her appeal was pending with the Board, and a regulation might suggest that this travel qualified as a "withdrawal" of her appeal. 8 C.F.R. § 1003.4. She lastly asserts that she might have also qualified for a *nunc pro tunc* waiver for one of the two grounds of

inadmissibility.  *Cf. Ramirez-Canales v. Mukasey*, 517 F.3d 904, 910–11 (6th Cir. 2008).  But Rahman does not dispute the Attorney General's response that we need not reach these issues because her motion for adjustment of status would still come up short on extreme-hardship grounds even if we agreed with her on all three points.  And neither courts nor agencies must decide issues that are "unnecessary" to the outcome of the case before them.  *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam).  So we decline to reach these issues here.

We dismiss the petition for review.