In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 25-2417

DANUTA DEC,

*Plaintiff-Appellant,*

*v.*

MARKWAYNE MULLIN, Secretary of Homeland Security, in his
official capacity, and JOSEPH B. EDLOW, Director, U.S. Citizen-
ship & Immigration Services,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-10986 — **Sunil R. Harjani**, *Judge.*

---

ARGUED FEBRUARY 24, 2026 — DECIDED MARCH 30, 2026

---

Before BRENNAN, *Chief Judge*, and EASTERBROOK and
TAIBLESON, *Circuit Judges*.

BRENNAN, *Chief Judge*. Immigration laws authorize family-
based visas, which allow immigrants to enter and remain in
the United States. But persons unlawfully present for more
than a year are inadmissible. Before their visa can issue, they
must leave the country and remain abroad for ten years. One

way to avoid this waiting period is to seek a waiver of inadmissibility.

Danuta Dec, a native and citizen of Poland, was denied such a waiver. Because her sister, not her deceased mother, was the qualifying relative for her visa application, the statute she invoked to show waiver eligibility did not apply. *See* 8 U.S.C. § 1154(l). She challenged the agency's decision in federal district court, which dismissed her claim for lack of subject-matter jurisdiction. Because the applicable federal statute unequivocally precludes judicial review of all agency decisions as to waivers—including eligibility determinations—we affirm.

This case presents a second issue. The petitioner's opening brief included non-existent citations and a false quotation, seemingly generated by artificial intelligence. On these specific circumstances, we admonish petitioner's attorney but impose no other sanction.

## I

### A

Our immigration laws allow citizens and lawful permanent residents to seek permission, documented in a visa, for their relatives to join them in the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i). Visas are limited in number and the wait can be lengthy. When one becomes available, the immigrant alien may enter the country, remain here, and seek legal permanent residence (a "green card"). *See Soni v. Jaddou*, 103 F.4th 1271, 1272 (7th Cir. 2024); 8 U.S.C. § 1255.

To be eligible for a visa, however, one must be admissible to this nation. 8 U.S.C. §§ 1201(g), 1255(a). An alien unlawfully present in the United States for more than a year is

inadmissible. They must leave and remain abroad for ten years. 8 U.S.C. § 1182(a)(9)(B)(i)(II). During that time, any visa petition or application for a green card is put on hold. *See* 8 U.S.C. §§ 1201(g), 1255(a).

Certain classes of aliens may apply for a waiver of inadmissibility while remaining in the United States. 8 U.S.C. § 1182(a)(9)(B)(v). Congress committed waivers to the "sole discretion" of the Attorney General if "it is established to [her] satisfaction" that refusing admission "would result in extreme hardship to the citizen or lawfully resident spouse or parent." *Id*. This authority has since been transferred to the Secretary of Homeland Security. *See Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019); 6 U.S.C. § 557. Under his supervision, the United States Citizenship and Immigration Services (USCIS) reviews applications for waivers of inadmissibility.

In deciding what qualifies as an "extreme hardship," USCIS policy incorporates another statute. Under 8 U.S.C. § 1154(l), Congress provides that an alien residing in the United States when their qualifying relative dies, and who remains here afterward, "shall have" certain petitions and "any related applications, adjudicated notwithstanding the death of the qualifying relative[.]" The USCIS views applications for waiver of admissibility as a "related application" that must be adjudicated. Per its policy manual, however, the agency "treats the qualifying relative's death as the functional equivalent of a finding of extreme hardship," so long as the deceased relative was the qualifying relative who filed the pending or approved visa petition.[1]

---

[1] USCIS Policy Manual, Vol. 7 USCIS-PM Pt. A Ch. 9(A)(1), (2) (August 29, 2025).

**B**

Danuta Dec was approved for a visa in 2009, based on a petition filed on her behalf by her sister, a U.S citizen. 8 U.S.C. § 1153(a)(4). While waiting for a visa to become available and issue, Dec was present in this country unlawfully for over one year, so by statute she is inadmissible for ten years. 8 U.S.C. § 1182(a)(9)(B)(i)(II). This placed on hold her eligibility for a visa and her ability to seek a green card.[2]

In May 2020, Dec's mother, a lawful permanent resident, passed away. Dec then filed a Form I-601A with the USCIS seeking waiver of inadmissibility. In her application, she invoked her mother's death as the ground for her eligibility under 8 U.S.C. § 1154(l). In August 2024, the USCIS denied her application, and it later rejected her motion to reopen or reconsider. The agency deemed her ineligible for waiver because her sister, not her mother, was the qualifying relationship for her visa petition. So, the agency's policy of counting the death of a qualifying relative as an "extreme hardship" did not apply.

Dec then petitioned the Northern District of Illinois for a declaratory judgment to clarify her eligibility for relief under 8 U.S.C. § 1154(l). She also requested an order setting aside the USCIS's decision as arbitrary, capricious, or otherwise unlawful under the Administrative Procedure Act (APA). 5 U.S.C. § 500 et seq.; *id*. § 701 et seq. The Department of

---

[2] As the district court observed, the record does not show when Dec entered the U.S. Her briefs on appeal, however, say she has been in this country for 20 years, so she would have arrived in 2006 at the latest.

Homeland Security moved to dismiss for lack of subject-matter jurisdiction, which the district court granted. Dec appeals.

## II

At issue is whether the district court had jurisdiction to review the USCIS's decision, which we review de novo.[3] *Dernis v. United States*, 136 F.4th 714, 716 (7th Cir. 2025).

Dec advances two arguments in favor of jurisdiction. First, she submits that § 1154(l) imposes on the USCIS nondiscretionary duties amenable to judicial review in a federal district court. Second, Dec seeks judicial review of agency action under the APA's presumption of reviewability. Both arguments face the same jurisdictional hurdles. The APA presumptively allows judicial review of agency action. *See* 5 U.S.C. § 706(1). But the presumption is rebutted when actions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2); *see also* 8 U.S.C. § 1252(a)(2)(B), or other statutes preclude judicial review, 5 U.S.C. § 701(a)(1). This jurisdictional inquiry requires close review of the statutory language to discern whether either exception applies. *See Dijamco v. Wolf*, 962 F.3d 999, 1003 (7th Cir. 2020).

As with all questions of statutory interpretation, "we start with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (citation omitted). The pertinent statutory language must be read with the whole statute in mind. *Id*. at 851–52. Unless otherwise

---

[3] Dec also asks us to decide that the district court improperly deferred to agency interpretation of 8 U.S.C. § 1154(l) and that, on the merits, she meets § 1154(l)'s criteria and is thus eligible to receive an ultimate discretionary decision on her waiver application. Because the district court lacked jurisdiction, we do not resolve these merit-based arguments.

defined, words take their "ordinary, contemporary, common meaning." *Id.* at 852 (citation omitted). That meaning is fixed at the time of statutory enactment, so contemporary dictionaries can be useful guides. *Id.* Yet for legal terms of art drawn from our rich legal tradition, it is assumed that Congress "presumably knows and adopts the cluster of ideas … attached to each borrowed word." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). If the statute's plain meaning is unambiguous, the interpretive inquiry ends and application begins. *Melvin*, 948 F.3d at 852; ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 436 (2012) ("[I]f the text of a statute is unambiguous, it should be applied by its terms without recourse to policy arguments, legislative history, or any other matter extraneous to the text.").

## A

We first evaluate whether waiver eligibility determinations are unreviewable discretionary decisions. *See* 5 U.S.C. § 701(a)(2); 8 U.S.C. § 1252(a)(2)(B). The ultimate decision to waive inadmissibility is expressly committed to the agency's "sole discretion." 8 U.S.C. § 1182(a)(9)(B)(v). But this case is about the threshold eligibility determination, which requires establishing "to the satisfaction of [the agency]" that refusing admission would result in "extreme hardship" to the qualifying relative. *Id.* In Dec's view, such determinations are reviewable legal conclusions.

The statutory language says otherwise. On its own, a hardship standard could be judicially reviewable. But by requiring the executive to be satisfied that the standard is met, Congress made the decision inherently discretionary. *Gulomjonov v. Bondi*, 131 F.4th 601, 610 (7th Cir. 2025); *see also Bouarfa v. Mayorkas*, 604 U.S. 6, 9 (2024).

The Supreme Court's discussion in *Wilkinson v. Garland* confirms this reading. 601 U.S. 209, 225 (2024). There, the Court interpreted another immigration statute, 8 U.S.C. § 1229b(b)(1)(D), which allows aliens subject to final removal orders to seek relief and to avoid deportation. *Id*. Like the statute here, the applicant must show hardship to be eligible for ultimate discretionary relief. In the cancellation-of-removal context, however, the Court held that eligibility determinations were reviewable mixed questions of law and fact. *Wilkinson*, 601 U.S. at 225 (interpreting 8 U.S.C. § 1229b(b)(1)(D)) (citing *Guerrero-Lasprilla*, 589 U.S. 221, 225 (2020)).

In so holding, though, the Court distinguished the statute at issue here. Its reasoning relied on Congress's omission of any language requiring executive "satisfaction," or an equivalent, from § 1229b(b)(1)(D). *Wilkinson*, 601 U.S. at 224. By contrast, the Court cited § 1182 as an example in which Congress "chose to retain similar language in provisions governing other forms of discretionary relief." *Id*. In light of *Wilkinson*, the statutory language at issue here makes waiver eligibility inherently discretionary and unreviewable. 5 U.S.C. § 701(a)(2); 8 U.S.C. § 1252(a)(2)(B); *see Rahman v. Bondi*, 131 F.4th 399, 407–08 (6th Cir. 2025) (citing *Wilkinson*, 601 U.S. at 224) (waiver eligibility is discretionary and unreviewable, unlike cancellation-of-removal eligibility).

That the USCIS's policy incorporates its interpretation of another immigration statute does not change this. On the agency's read of 8 U.S.C. § 1154(l), the death of a qualifying relative is functionally equivalent to "extreme hardship" under § 1182(a)(9)(B)(v), so long as the same relative petitioned

for the alien's visa.[4] Dec favors a broader reading of § 1154(l). As this court observed in *Dijamco*, "we have not yet had occasion to consider § 1154(l)," let alone "whether it imposes upon USCIS nondiscretionary obligations when processing visa petitions [and related applications] that could be amenable to judicial review." 962 F.3d at 1004 (citation modified). Nor can we do so here. The policy, an interpretation of the statute, is an exercise of the USCIS's discretion, and therefore unreviewable.

**B**

Even if all that is wrong, Dec must clear another jurisdictional hurdle. The inadmissibility statute includes other language that could preclude judicial review of her claim. 5 U.S.C. § 701(a)(1). The relevant provision states: "No court shall have jurisdiction to review a *decision* or action by [the agency] *regarding* a waiver." 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). To get around this jurisdiction-stripping language, Dec submits that a "decision" refers only to the ultimate discretionary decision, not eligibility determinations.

Under both common and legal usage, the word "decision" encompasses the USCIS's eligibility determinations. Congress did not define the word, but common usage refers to "determination[s] arrived at after consideration." *Decision*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/decision (last visited Mar. 9, 2026). Legal usage is more specific: a decision is a "judicial or agency determination after consideration of the facts and the law." *Decision*, BLACK'S LAW DICTIONARY (12th ed. 2024).

---

[4] USCIS Policy Manual, *supra* note 1, at 3.

If any daylight exists between these usages, it is immaterial. The USCIS's eligibility determination satisfies both. The agency received Dec's application, considered how its interpretation of § 1154(l) applied to the facts, and made a "determination." *Id*. In an unwitting example of such usage, Dec's own complaint calls the denial of her application an agency "decision."

Further, the immediate context of these words makes their meaning plain. Section 1182(a)(9)(B)(v) does not limit or qualify the word "decision." It expands it by referring to all decisions "regarding a waiver." In legal contexts, the use of "regarding" generally has a "broadening effect." *Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (citation omitted). These words, taken together, encompass any decision relating to a waiver application, including threshold eligibility determinations. *See Patel*, 596 U.S. at 338–39.

Further still, the Immigration and Nationality Act read as a whole confirms the plain meaning. As this court has already observed, § 1182(a)(9)(B)(v) "lacks a proviso parallel to the one in 8 U.S.C. § 1252(a)(2)(D), which allows judicial review of legal matters." *Soni*, 103 F.4th at 1273. The two statutes appear in the same Act and share similar language. Construing § 1182(a)(9)(B)(v) to preclude review of ultimate discretionary decisions, but not legal conclusions concerning eligibility, would render Congress's choice to add a proviso for review of legal matters in one place, but not the other, meaningless surplusage. *See Childs v. Webster*, 168 F.4th 1020, 1028 (7th Cir. 2026) (citing SCALIA & GARNER, READING LAW 174–79 (2012) (discussing the surplusage canon)). The statute's plain meaning is unambiguous, so our inquiry ends and application

begins. *Melvin*, 948 F.3d at 852; SCALIA & GARNER, READING LAW 436.

By enacting § 1182(a)(9)(B)(v)'s broad jurisdiction-stripping language, Congress precluded judicial review of all waiver eligibility determinations, even those based on agency policies interpreting other immigration statutes. Put simply, "[n]o review means no review; the statute does not need to list all of the many potential legal theories that are not reviewable." *Soni*, 103 F.4th at 1273. The district court therefore properly dismissed Dec's complaint for lack of subject-matter jurisdiction.

This does not mean that Dec may never seek judicial review of a legal conclusion. If faced with a final removal order, Dec could seek review in a court of appeals. 8 U.S.C. § 1252(a)(2)(D). Although this may delay potential relief and result in uncertainty for Dec, especially given that no removal proceedings have been initiated against her, this is the statutory scheme that Congress enacted.

### III

One more issue. In its standard of review section, Dec's opening brief cites two cases that do not exist and recounts an imaginary quotation. Such errors have tell-tale signs of AI hallucinations, in which an AI large-language model generates a fictional or inaccurate output.

**A**

When asked at oral argument, Dec's counsel could not explain these citations.[5] She also denied using AI to prepare the briefs. When pressed, she apologized, but she could not name the source of the errors.

In a post-argument letter, Dec's counsel reiterated that she did not use AI, nor would she even "know where to start" because she is "way too technologically challenged to even attempt to use AI." Instead, she "presumably copied and pasted that portion from another brief several months ago," but she has not "been able to locate it." She "regret[s]" not double checking for accuracy. As one who has practiced law for over ten years and held positions in the government for over fifteen, she acknowledged the need to be more "scrupulous." She also took responsibility, stating, "This was clearly my error."

Dec's counsel ultimately assured us she "did not mean to engage in deception" or to seek "tactical advantage." She also "sincerely apologize[d] to both the court and [her] opponent for [her] oversight." When she prepared the brief, her firm had "dramatically expand[ed]" its caseload due to the "increased immigration enforcement in Chicago." She also made known that, going forward, she did not plan to use AI and proposed ways to mitigate the risks of these errors reoccurring.

---

[5] Oral argument, February 24, 2026, at 5:30–6:44 (https://media.ca7.uscourts.gov/sound/2026/gw.25-2417.25-2417_02_24_2026.mp3).

**B**

This court recently acknowledged the promise and pitfalls of AI in pro se litigation. *See Jones v. Kankakee Cnty. Sheriff's Dep't,* 164 F.4th 967, 970 (7th Cir. 2026). Other courts have also grappled with the use of generative AI in briefing, referring to AI hallucinations and non-existent case citations as repeat offenders. *See, e.g., In re Nwaubani*, 2026 WL 687194 at *3 (4th Cir. Mar. 11, 2026) (collecting cases). The use of AI will only become more common and sophisticated. So, "we have little doubt that litigants and courts alike will arrive over time at sound and workable practices, policies, and rules that account for these realities and the nuanced consideration they deserve." *Jones*, 164 F.4th at 970.

Whatever AI's future in litigation, our concern lies with trained lawyers failing to check the accuracy of legal citations and quotations in their filings. We remind counsel that this is easier now than ever. Entire briefs can be submitted to Westlaw or LexisNexis to check citations. Though Dec's counsel described her efforts to mitigate future errors, she should have been more careful. Still, she took responsibility and showed contrition. That opposing counsel also failed to catch these errors and bring them to our attention also gives us pause, albeit to a lesser degree.

For these reasons, we admonish Dec's counsel for her inclusions of non-existent citations and a false quotation in petitioner's brief. This opinion should be read to impress upon her and the bar the importance of honesty and vigilance in checking the accuracy of all citations and quotes. Under this circuit's standards for professional conduct, lawyers promise that they will "not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written

communication to the court."[6] In every filing, lawyers represent that all "legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See Jones*, 164 F.4th at 970 (quoting FED. R. CIV. P. 11(b)(2), (3)); *see also* FED. R. APP. P. 38.

Adherence to these rules is crucial to the administration of justice. Violations, whether AI-related or not, result in confusion and time wasted. The court must track down the false citations, seek explanations from counsel, and evaluate the magnitude of the violations. This generates unnecessary work on a case within a case. This is why lawyers pledge to "be considerate of the time constraints and pressures on the court and court staff inherent in their efforts to administer justice."[7]

Beyond this public admonishment, we decline to issue an order for Dec's counsel to show cause why she should not receive any further sanctions. We are persuaded by her acceptance of responsibility and sincere apology that these false citations were not made knowingly or intentionally. Moreover, because these errors were few and mainly supported the undisputed standard of review, we find her representation that she did not use AI plausible.

## IV

The USCIS's decision to deny Dec's application for a waiver of inadmissibility under 8 U.S.C. § 1182(a)(9)(B)(v) is unreviewable. Threshold eligibility determinations are

---

[6] Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, https://www.ca7.uscourts.gov/pages/LandingPage.php?page=standards-for-professional-conduct.

[7] *Id*.

committed to agency discretion. Moreover, all decisions relating to such waivers—even if based in legal conclusions—are judicially unreviewable. So, we need not decide whether 8 U.S.C. § 1154(l) imposes any reviewable nondiscretionary obligations on the agency. The APA's presumption of reviewability is rebutted for the same reasons. The district court therefore lacked jurisdiction to review Dec's claim.

AFFIRMED