RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ODINAKA ETHELBERTH NWOSU,

*Petitioner*,

*v.*

TODD W. BLANCHE, Acting U.S. Attorney General,

*Respondent*.

No. 25-3831

───────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 099 158 417.

Decided and Filed:  May 29, 2026

Before:  SUTTON, Chief Judge; LARSEN, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Glenn Eric Sproull, PALMER REY, PLLC, Southfield, Michigan, for Petitioner. Jennifer P. Williams, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge.  After the government sought to remove Odinaka Ethelberth Nwosu to Nigeria, he requested withholding of removal and cancellation of removal.  To support his withholding-of-removal claim, Nwosu alleged that individuals in Nigeria had kidnapped his father back in 2004.  To support his cancellation-of-removal claim, Nwosu alleged that his removal would significantly harm his children.  But an immigration judge rejected his withholding claim because he did not corroborate his testimony about the kidnapping with other

evidence. And the judge rejected his cancellation claim because he did not introduce evidence to establish that his partner lacked the means to support their children by herself. Nwosu challenges these conclusions, but his arguments rest on a misunderstanding of the law. We thus deny his petition for review.

I

Nwosu was born in Nigeria in 1967. He grew up and received a university education there. In 2002, Nwosu came to the United States on a business visa that expired early the next year. He has lived in this country ever since, making his home in Detroit, Michigan. Two years after his entry, Nwosu obtained his current job working for a company that helps children and the elderly. He also got married soon after his arrival. Nwosu's wife filed a petition that would allow him to remain here, but they separated in 2007. He then met his current partner, a U.S. citizen who was also born in Nigeria. The couple live together with their three children. They each contribute to paying the family's expenses. Nwosu's partner works full-time as a nurse in the intensive care unit of a Detroit hospital.

In 2010, the government issued Nwosu a notice to appear in removal proceedings. It charged him with being deportable for remaining in the country after his visa expired. *See* 8 U.S.C. § 1227(a)(1)(B). Nwosu conceded that he was deportable. And he conceded that he could not apply for asylum because he did not seek that relief in time. *See id.* § 1158(a)(2)(B). But Nwosu applied for cancellation of removal and withholding of removal. (He also applied for relief under the Convention Against Torture. But he has "abandoned" this relief by failing to mention it in his opening brief. *Mbonga v. Garland*, 18 F.4th 889, 899 (6th Cir. 2021).)

For reasons that the parties do not identify, Nwosu's removal proceedings languished for over a decade. He eventually sought to prove his withholding and cancellation claims at a hearing in February 2022. During this hearing, Nwosu testified that a group of individuals had kidnapped his father back in 2004. His father was in his 80s at this time. These individuals allegedly called Nwosu in the United States and tried to extort $50,000 from him by threatening to kill his father. Nwosu told the kidnappers that he did not have any money, and he and his family chose not to contact the "corrupt" police. Admin. R. (A.R.) 168, 171. The kidnappers

released his father after five days, allegedly because he was sick.  One of Nwosu's brothers eventually went to the police.  The authorities allegedly caught the kidnappers and "sentenced" them "to five years in jail in Nigeria."  A.R. 166.  Nwosu's father died from a cardiac condition a few months after the kidnapping.  Because the kidnappers have now been released, Nwosu fears that they will kill him if he returns to Nigeria.

An immigration judge denied Nwosu relief and ordered him removed to Nigeria.  The immigration judge first held that Nwosu did not produce enough evidence to establish his withholding-of-removal claim.  Although finding Nwosu "essentially credible," the judge held that this claim failed for a lack of "corroboration" about his father's kidnapping.  A.R. 101.  For example, a police report about the alleged crime noted only that Nwosu's family had reported their father "missing"; it said nothing about a kidnapping.  *Id.*; *see* A.R. 446.  Likewise, his father's death certificate did not mention a kidnapping.  A.R. 101–02; *see* A.R. 448.  Nwosu also produced no records about the prosecution of the kidnappers or affidavits from family members in Nigeria.  A.R. 102.  And even if Nwosu had supplied this corroborating evidence, the judge also concluded that the harm to his father would have arisen for economic reasons, not for a reason covered by the withholding-of-removal statute.  A.R. 102–03.

Turning to Nwosu's cancellation-of-removal request, the judge held that he failed to prove that his removal would cause the required "exceptional and extremely unusual hardship" to his children.  A.R. 103.  The judge reasoned that his children would remain in this country, that they are healthy, and that they have done well in school.  And while they would lose Nwosu's financial support, their mother worked full-time.  Nwosu produced no evidence about how much she made, so he failed to show that her income would fall short.

The Board of Immigration Appeals upheld the immigration judge's decision.  The Board agreed that Nwosu failed to "sufficiently corroborate" his withholding-of-removal claim.  A.R. 4.  It thus opted not to reach the other rationales for rejecting this claim.  The Board next agreed that Nwosu did not prove that his children would suffer the required hardship.

II

Nwosu has petitioned our court to review the denial of his withholding-of-removal and cancellation-of-removal claims.  Although we generally review the Board's decision as the final agency action, the Board here largely adopted the relevant parts of the immigration judge's decision as its own.  *See Sy v. Bondi*, 168 F.4th 828, 834 (6th Cir. 2026).  So we will review the immigration judge's decision against the relevant legal standards.  *See id.*

A. Withholding of Removal

Nwosu first challenges the Board's rejection of his request for withholding of removal. Under the withholding-of-removal statute, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  Immigrants bear the burden to prove that they meet "the applicable eligibility requirements" for this relief.  *Id.* § 1229a(c)(4)(A)(i).

The immigration laws make clear that immigration judges bear the primary fact-finding responsibility for all factual questions that could affect a request for withholding of removal. Those laws direct immigration judges to follow the asylum statute's evidentiary and procedural framework when determining these facts.  *Id.* § 1231(b)(3)(C) (citing *id.* § 1158(b)(1)(B)(ii)–(iii)).  Under this framework, an immigration judge may find that an immigrant's "testimony" alone meets the immigrant's burden of proof if it is "credible," "persuasive," and "specific" in nature.  *Id.* § 1158(b)(1)(B)(ii).  But the framework also allows an immigration judge to require corroborating evidence: "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."  *Id.*  To reject a claim on corroboration grounds, though, our precedent now requires the immigration judge to give immigrants "an opportunity to explain" the "absence" of this corroborating evidence.  *Guzman-Vazquez v. Barr*, 959 F.3d 253, 261 (6th Cir. 2020).

In contrast to immigration judges, appellate courts have only a secondary responsibility for factual questions.  Congress told courts to follow a deferential standard when evaluating an

immigration judge's decision to require corroborating evidence: "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). In other words, courts must treat an immigration judge's finding that the immigrant could have produced corroborating evidence as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* § 1252(b)(4)(B); *see Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010).

This "highly deferential" test forecloses Nwosu's claim. *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (citation omitted). A "reasonable trier of fact" could have found (as the immigration judge did) that Nwosu should have produced "corroborating evidence" to support his allegation that individuals kidnapped his father. 8 U.S.C. § 1252(b)(4). For one thing, Nwosu was able to produce a police report (indicating that his father had gone "missing") and his father's death certificate (showing that he died from heart failure). A.R. 101–02, 446, 448. Neither document mentioned any kidnapping. But other public records likely memorialized this crime because Nwosu testified that the authorities arrested and prosecuted the kidnappers and sentenced them to five years' imprisonment. Because Nwosu was able to produce other official records, a reasonable factfinder could conclude that he should have produced the police or court records that would have confirmed this arrest and prosecution.

For another thing, Nwosu testified that he still has many relatives in Nigeria. He added that many of his "family members" knew about his father's kidnapping. A.R. 196. A reasonable factfinder could expect him to obtain letters from his mother, brother, or other siblings giving their firsthand accounts of the kidnapping. *See Andret v. Garland*, 2024 WL 167115, at *4 (6th Cir. Jan. 16, 2024); *Guerrero-Ramirez v. Wilkinson*, 843 F. App'x 681, 683 (6th Cir. 2021); *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009). Indeed, Nwosu said that he still "talk[s] to" his mother and that his brother tracked down the police report and death certificate for him. A.R. 192–93. Why couldn't they have sent letters too?

The immigration judge also gave Nwosu an adequate "opportunity to explain" why he did not have this evidence. *Guzman-Vazquez*, 959 F.3d at 263. On cross-examination, the

government's counsel asked Nwosu if he had asked his mother for a letter. He responded vaguely that "some letters" were produced. A.R. 192. But he did not point to any letter corroborating the kidnapping. And he later conceded that he "didn't have" any of his relatives send such a letter (without providing any excuse for this oversight). A.R. 196. Likewise, when asked why he did not produce a "police report" or official record showing the kidnappers' arrest and prosecution, he responded that he "did not know that . . . you need that." A.R. 195. Yet he was represented by counsel and had over a decade to gather this corroborating evidence during his lengthy removal proceedings. So a reasonable factfinder could find Nwosu's failure to "provide[]" any "reason" for the lack of corroboration even more remarkable. *Guzman-Vazquez*, 959 F.3d at 265.

Nwosu's responses do not change things. He first suggests that the immigration laws required the immigration judge to accept his testimony "as true" once the judge found him credible. Petitioner's Br. 13 (quoting *Skripkov v. Barr*, 966 F.3d 480, 486 (6th Cir. 2020)) (emphasis omitted). Not so. Those laws make clear that an immigrant might need to produce "evidence that corroborates" the immigrant's "*otherwise credible* testimony[.]" 8 U.S.C. § 1158(b)(1)(B)(ii) (emphasis added). So the Supreme Court has held that an immigration judge need not treat an immigrant's testimony as "sufficient to meet the burden of proof" even if the judge finds the testimony "credible" as a general matter. *Ming Dai*, 593 U.S. at 371. And our cases are not to the contrary. True, we once said that an immigrant's "factual statements should be accepted as true" when the immigration judge found him "credible[.]" *Skripkov*, 966 F.3d at 486. There, though, the immigration judge had accepted the relevant factual claims as true and rejected the immigrant's requests for relief on other grounds. *Id.* at 485–86. So our decision said nothing about whether we must accept testimony as true when an immigration judge rejects it for lack of corroboration.

Nwosu next argues that the immigration judge "overlooked" other corroborating evidence: reports about the general conditions in Nigeria. Petitioner's Br. 14, 15–18. But the judge noted that he had "considered" all the "documentary evidence," including these "country conditions materials[.]" A.R. 121. And a "reasonable trier of fact" could conclude that nothing

in this *generic* country-condition evidence corroborated Nwosu's *specific* claim that individuals had kidnapped his father in 2004. 8 U.S.C. § 1252(b)(4).

Nwosu also criticizes the immigration judge's decision for its brevity, noting that the judge used all of "one long paragraph" to reject his withholding-of-removal claim. Petitioner's Br. 15. Yet the immigration laws do not give us the authority to grade an immigration judge's "'opinion-writing' abilities." *Palucho v. Garland*, 49 F.4th 532, 539 (6th Cir. 2022) (citation omitted). Instead, we may ask only whether an immigration judge gave enough of a "rational explanation" that we can understand the basis for the rejection of an immigrant's claim. *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021); *see Palucho*, 49 F.4th at 539. And here, the judge's paragraph of analysis left no doubt about the grounds for the denial of relief: Nwosu did not provide any corroboration for his claim that his father had been kidnapped even though that evidence should have been available to him. The judge did not need to say anything more.

Nwosu thus transitions to another alleged process error. He says that the immigration judge failed to give him the "opportunity" that our precedent requires to explain why he did not introduce corroborating evidence. Petitioner's Br. 17 (quoting *Guzman-Vazquez*, 959 F.3d at 261) (emphasis omitted). But Nwosu had multiple chances to explain the absence of this evidence. True, the immigration judge did not disclose that he might use the lack of corroboration against Nwosu or ask him why he had not produced this evidence. But the government's counsel questioned Nwosu on cross-examination about the lack of letters from his family and the lack of public records from the criminal case against the kidnappers. Our caselaw required nothing else. *See Guzman-Vazquez*, 959 F.3d at 263; *Gaye v. Lynch*, 788 F.3d 519, 529–30 (6th Cir. 2015). In response to these questions, though, Nwosu said only that he "didn't" ask for any letters and "did not know that" he "need[ed]" the public records. A.R. 195–96. A "reasonable trier of fact" could conclude that these excuses fell short of establishing that Nwosu could not "reasonably obtain [this] evidence." 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1252(b)(4).

Lastly, Nwosu contends that the immigration judge wrongly failed to decide whether he had adequately alleged a cognizable "particular social group" covered by the withholding-of-removal statute and whether he had shown a well-founded fear of persecution in Nigeria. Petitioner's Br. 19–22. Yet the immigration judge had no need to decide these issues because the

judge found that any persecution would arise for "economic" reasons and thus would not be "on account of" Nwosu's membership in his alleged particular social groups. A.R. 102–03. In any event, the Board upheld the judge's decision for lack of corroboration *alone*. A.R. 3–4. Because that ground provided an independent basis to reject Nwosu's claim, it was "unnecessary" for the Board to consider Nwosu's other arguments. *Rahman v. Bondi*, 131 F.4th 399, 409 (6th Cir. 2025) (quoting *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam)). And we need not (indeed, cannot) consider issues that the Board did not reach. *See Mbonga*, 18 F.4th at 893.

### B. Cancellation of Removal

Nwosu next challenges the Board's rejection of his request for cancellation of removal. The immigration laws give the Attorney General discretion to "cancel removal of" immigrants who meet four preconditions. 8 U.S.C. § 1229b(b)(1). As relevant now, immigrants can qualify for this relief if they "establish[] that removal would result in exceptional and extremely unusual hardship to" a qualifying relative (including a U.S. citizen child). *Id.* § 1229b(b)(1)(D).

The immigration laws regulate our jurisdiction over this hardship question. *See id.* § 1252(a)(2)(B), (D). On the one hand, we lack jurisdiction to review any of the factual findings that an immigration judge makes when concluding that an immigrant has failed to show the required hardship. *See Patel v. Garland*, 596 U.S. 328, 347 (2022); *Singh v. Rosen*, 984 F.3d 1142, 1149–50 (6th Cir. 2021). On the other hand, we have jurisdiction to review the Board's answer to purely legal questions, such as its decision about what Congress meant by the phrase "exceptional and extremely unusual hardship." *Singh*, 984 F.3d at 1149–50 (quoting 8 U.S.C. § 1229b(b)(1)(D)). And we have jurisdiction over the Board's answer to the main "mixed question of law and fact" in this context: Does an immigrant's factual situation rise to the level of hardship that this law requires? *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024).

We review any purely legal questions de novo. *See Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024). And as we have said, the plain language of the cancellation-of-removal provision ("exceptional and extremely unusual hardship") makes clear that it sets a demanding standard. 8 U.S.C. § 1229b(b)(1)(D). To qualify as exceptional and extremely unusual, a relative's hardship must exceed the "[o]rdinary" and "expected" difficulties that

accompany any close relative's removal.  *Moctezuma-Reyes*, 124 F.4th at 422; *see In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001).  To decide whether hardship to a qualifying relative rises to the required level, we look to the totality of the circumstances, including the relative's economic situation, health conditions, and educational opportunities. *See, e.g.*, *Baltazar Us v. Blanche*, __ F.4th __, 2026 WL 1162684, at *3 (6th Cir. Apr. 29, 2026); *Moctezuma-Reyes*, 124 F.4th at 423–24; *Singh*, 984 F.3d at 1154–55; *Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64.

Until recently, we had yet to decide on the specific standard of review to govern the Board's answer to the "mixed" question whether a relative's factual situation met this hardship test.  *See Singh*, 984 F.3d at 1154.  But we have now held that we must follow the statutory substantial-evidence standard for factual findings.  *See Baltazar Us*, 2026 WL 1162684, at *2. Under this standard, we must treat the Board's answer as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

This combination of a demanding hardship test with a forgiving standard of review leads us to reject Nwosu's challenge.  A "reasonable adjudicator" could conclude that Nwosu did not show that his three children would suffer the rare type of hardship that permits cancellation of removal.  8 U.S.C. § 1252(b)(4)(B); *see Moctezuma-Reyes*, 124 F.4th at 421.  His children would remain in this country, where they have been "healthy and doing well in school."  A.R. 5.  And his partner has a full-time job as a nurse at a hospital, so Nwosu failed to show that she would be unable to financially support the children by herself.

Nwosu responds by pointing to the allegedly dire conditions in Nigeria.  He first suggests that the "conditions for children" are particularly egregious.  Petitioner's Br. 25.  But he conceded that his children would not return with him, so those conditions are beside the point. He next suggests that the children would be harmed because they will "worry about" his safety. *Id.*  This logic would mean that all immigrants removed to Nigeria could show the required hardship to relatives who will *remain* in this country merely by pointing to the conditions there. We doubt that an immigrant could ever prove the required hardship based on this type of fear. But we need not resolve this broader point because Nwosu has not done so based on his return to

Nigeria.  After all, he testified that most of his relatives continue to safely live in Nigeria.  And he testified that his own children had visited the country before.  So he has shown only that his children will suffer the types of "emotional strains" that exist in nearly any removal case. *Moctezuma-Reyes*, 124 F.4th at 423.  Yet these strains do not meet the governing test.  *Id.*

Nwosu next argues that his children will suffer a diminished standard of living without his income.  But these "financial" "strains" are likewise expected in most cases when a parent is removed.  *Id.*  And Nwosu disregards the immigration judge's response to this claim.  The cancellation-of-removal provision placed the burden of proof on Nwosu to "establish[]" this hardship.  8 U.S.C. § 1229b(b)(1)(D); *see id.* § 1229a(c)(4)(A)(i); *Sustaita-Lopez v. Garland*, 2024 WL 509619, at *2 (6th Cir. Feb. 9, 2024).  Yet he did not introduce any evidence showing his partner's nursing income.  Even on appeal, he claims that the children will face an "uncertain" future economically.  Petitioner's Br. 26.  But uncertainty does not suffice to show (as Nwosu must) that the children will face an abnormally difficult economic hardship.  In sum, a reasonable adjudicator would not be compelled to conclude that Nwosu's "removal would result in exceptional and extremely unusual hardship" to his children.  8 U.S.C. § 1229b(b)(1)(D).

We deny the petition for review.